**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID WAYNE LAUGHLIN,           ) | |
|                                 ) | |
|     Petitioner,        ) | |
|                                 ) | |
| vs.                             ) | Case No. CIV-06-637-HE |
|                                 ) | |
| WALTER N. DINWIDDIE,            ) | |
|                                 ) | |
|     Respondent.        ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action under 28 U.S.C. § 2254 seeking a writ of habeas corpus.[1] The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent has filed a response to the petition and the relevant state court record ("Record"). To date, Petitioner has neither replied nor sought an extension of time in which to do so. Thus, the case is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

Petitioner challenges his conviction following his blind plea of guilty to the charge of sexual abuse of a child, for which he was sentenced to fifty years of imprisonment. Case No. CF-2003-4252, District Court of Oklahoma County. Petitioner filed a timely motion to withdraw his guilty plea, and following a hearing, the trial court denied the motion. *See* Record, Transcript of Waiver of Jury Trial had on the 29th day of June 2004 and the Motion to Withdraw Plea of Guilty on the 29th day of August, 2004 ("WD I Tr.").

---

[1] The petition was initially filed in the United States District Court for the Northern District of Oklahoma and subsequently transferred to this Court pursuant to 28 U.S.C. §2241(d).

Petitioner, represented by new counsel, appealed to the Oklahoma Court of Criminal Appeals (OCCA) and argued that (1) he was denied his right to counsel at the hearing on the motion to withdraw plea; (2) his plea was not voluntary because it was entered as a result of coercion and undue influence, and (3) although a blind plea was entered, he was denied the benefit of a bargain when he was subjected to harsher punishment than was recommended by the District Attorney.  Response, Ex. 1.  By summary opinion entered on June 14, 2005, the OCCA found that Petitioner's Sixth Amendment right to effective assistance of counsel at the hearing on the motion to withdraw was violated by the district court's denial of defense counsel's motion to withdraw from representation based on a conflict of interest.[2]  Response, Ex. 2.  Therefore, the OCCA vacated the judgment of the district court and remanded the matter for a new hearing on the motion to withdraw plea.  *Id.*

Following a second hearing at which Petitioner appeared with different counsel, the trial court again denied the motion to withdraw guilty plea.  *See* Record, Transcript of Proceedings Hearing on Motion to Withdraw Plea had on the 7th day of July, 2005 ("WD II Tr.").  Petitioner appealed, alleging that (1) his guilty plea was not voluntary but the result of mistake and influence because the sentencing judge's bailiff advised defense counsel that "this would be a good day to plead"; (2) although a blind plea was entered, Petitioner was confused regarding an alleged agreement that the prosecutor would recommend a sentence of either thirty or thirty-five years imprisonment; and (3) he was

---

[2]At the hearing on the motion to withdraw plea, Petitioner's counsel, Mr. Robert Sisson, requested that he be allowed to withdraw from representation based on a conflict of interest and that a public defender be appointed to represent Petitioner at the motion hearing.  WD I Tr. at 7-17. The trial court found no conflict and denied Sisson's request to withdraw.  *Id.* at 17.

denied effective assistance of counsel. Response, Ex. 3. By summary opinion entered on February 3, 2006, the OCCA affirmed the decision of the district court and denied the writ of certiorari. Response, Ex. 4.

In his federal habeas petition, Petitioner raises three grounds for relief which have been liberally construed to raise the following claims. In Ground One Petitioner contends that his guilty plea was not voluntary but was the result of mistake and influence because the sentencing judge's bailiff advised defense counsel that "this would be a good day to plead." Petition at 5. In his second ground for relief, Petitioner alleges that his blind plea was entered as a result of confusion because defense counsel advised Petitioner that he would receive a sentence of five to seven years with counseling and although the prosecution recommended a sentence of thirty or thirty-five years imprisonment, the trial court imposed a fifty-year sentence. Petition at 6. In his third ground for relief, Petitioner alleges that he was deprived of effective assistance of counsel. Petition at 7.

Respondent admits that the petition is timely and that the claims raised therein have been exhausted in state court. In response to Grounds One and Two Respondent contends that the OCCA's decision affirming the denial of Petitioner's motion to withdraw his plea is neither contrary to nor an unreasonable application of, federal law. Respondent contends that the OCCA's rejection of Petitioner's claim of ineffective assistance of counsel is likewise neither contrary to, nor an unreasonable application of, federal law, specifically, *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985).

**DISCUSSION**

Standard Governing Petitions For Habeas Corpus

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. *Williams*, 529 U.S. at 410-11; *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004).

I. Knowing and Voluntary Guilty Plea - Grounds One and Two

In Ground One Petitioner alleges, as he did in his second certiorari appeal, that his guilty plea was not voluntarily entered because it was the result of mistake and influence,

4

specifically, "[t]he sentencing judge [sic] own bailiff put his arm around defense counsel and said 'This would be a good day to plead.'" Petition at 5. In Ground Two Petitioner alleges that although a blind plea was entered, the plea was the result of confusion. Petition at 6. In support of his claim of confusion, Petitioner states that defense counsel told him he had talked with the Department of Corrections and "was advised of a time period of 5-7 years with counseling[ ]" and that although the prosecution recommended a sentence of either thirty or thirty-five years imprisonment, a fifty-year sentence was imposed. *Id.* In the February 3, 2006, order affirming the denial of Petitioner's second motion to withdraw, the OCCA considered these challenges to the validity of his guilty plea and found that the district court did not abuse its discretion in denying Petitioner's motion to withdraw plea. Response, Ex. 4 at 2.

The claims in Grounds One and Two challenge the knowing and voluntary nature of Petitioner's guilty plea. The Due Process Clause of the Fourteenth Amendment requires that a defendant's plea of guilty be knowingly and voluntarily entered. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Miles v. Dorsey*, 61 F.3d 1459, 1465-66 (10th Cir. 1995). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from [the state court's] findings." *Fields v. Gibson*, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992) (pre-AEDPA case)).

"A plea may be involuntary when an attorney materially misinforms the defendant of the consequences of the plea." *Fields*, 277 F.3d at 1213. For example, an attorney materially misinforms a defendant when he or she falsely represents that promises or guarantees exist. *Id.* Additionally, "a plea may be involuntary if counsel informs the defendant that he has no choice, he must plead guilty." *Id.* However, an erroneous sentence estimate by defense counsel does not render a plea involuntary, nor does a defendant's erroneous expectation – even if it is based on his attorney's erroneous estimate. *See Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970) (finding guilty plea voluntary even though counsel informed defendant that he would "get 25 years" and defendant was actually sentenced to 100 years). As explained by the Supreme Court:

> Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970).

The Tenth Circuit has found that a guilty plea can be voluntary despite trial counsel's "vigorous urg[ing]" that his client plead guilty because the attorney believed it was in his client's best interest. *Miles v. Dorsey*, 61 F.3d at 1470. "Indeed, one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests." *Fields*, 277 F.3d at 1214. A state court guilty plea is constitutional "if the circumstances demonstrate that the defendant understood the nature and the consequences of the

charges against him and that the defendant voluntarily chose to plead guilty." *Id.* at 1466 (citing *Boykin v. Alabama*, 395 U.S. at 242-44).

Here, the record shows that on June 29, 2004, the date set for trial, Petitioner appeared with trial counsel, Robert Sisson, and waived his right to jury trial. Record, WD I Tr. at 2-6.[3] The following day, Petitioner again appeared with Mr. Sisson and entered a plea of guilty to the charge of sexual abuse of a child in Case No. CF-2003-4252, before Oklahoma County District Judge Ray C. Elliott.  Because Petitioner waived the presence of a court reporter at the guilty plea hearing, there is no transcript of that proceeding. *See* Response, Ex. 6 (Plea of Guilty and Summary of Facts dated June 30, 2004,) (last page of unpaginated document). However, as a threshold matter, the guilty plea summary of facts form supports the finding that Petitioner's plea was voluntary and intelligent. The form indicates that Petitioner was age 54, had completed fourteen years of education, and was taking no medications that would influence his ability to understand the proceedings. Response, Ex. 6 at page 1. Petitioner's responses on this form, which he signed, indicated that he (1) could read and understood the document; (2) understood the nature and consequences of the proceeding; (3) had read and understood the charges; (4) had discussed the charges and any possible defenses with his attorney; and (5) understood that the maximum punishment for the offense of sexual abuse of a child was incarceration for life and a fine of $5000.00. *Id.* at page 1-2. Petitioner also indicated

---

[3]Defense counsel announced that Petitioner was waiving his right to jury trial "in consideration of" the State's offer to recommend a thirty-year sentence on the condition that Petitioner enter a blind plea the following morning. WD I Tr. at 2.

that he understood the constitutional rights he was waiving.[4] *Id.* at page 3. Petitioner acknowledged that there was no plea agreement, that he was entering a "blind plea," that the State agreed to "stand on rec. of 30 years," and that he understood that the court could sentence him within the range of punishment listed in the form. *Id.* at pages 3-4. Petitioner indicated that he had discussed the charges with his attorney and that he was satisfied with his attorney's advice. *Id.* at page 3. Petitioner specifically indicated that he had not been forced to enter the plea or promised anything by anyone that he was pleading guilty of his own free will without coercion or compulsion of any kind. *Id.* at page 4. The factual basis for the plea reflects this statement:

> I committed the crime of sexual abuse of a minor by touching the genitals of G.E. and causing her to touch my genitals on the 21st day of June 2003 in Okla. County.

*Id.* at page 4. Petitioner's signature follows this statement. The guilty plea summary of facts form also reflects Petitioner's statements under oath 1) that his attorney completed the form by inserting the answers to the questions after they went over the form together; 2) that he understood the contents of the form and agreed with the answers contained therein; and 3) that the answers on the form were true and correct. *Id.* at page 5. The trial court found that Petitioner understood the nature, purpose and consequences of the plea proceeding, and that Petitioner was mentally competent to enter his plea of guilty.

---

[4]The guilty plea summary of facts form informed Petitioner that if he went to trial (1) he had a right to counsel; (2) he was presumed innocent of the charges; (3) he had a right to remain silent; (4) he had the right to confront the witnesses against him; (5) he had a right to call witnesses and to present a defense; (6) the State was required to prove his guilt beyond a reasonable doubt; (7) a jury verdict would have to be unanimous; and (8) he could waive jury trial and be tried by a judge. Response, Ex. 6 at page 3. Petitioner acknowledged that he understood these rights and that he understood he was waiving these rights by pleading guilty. *Id.*

*Id. at* page 6.  Thereafter, Petitioner was sentenced to fifty years of imprisonment.  *See* Response, Ex. 2.

On July 25, 2005, following the district court's denial of Petitioner's first motion to withdraw and the OCCA's remand for further proceedings on the motion to withdraw plea, Petitioner appeared for a second hearing with newly appointed counsel, assistant public defender Robin McPhail, before Judge Elliott.  Judge Elliott began the second hearing by summarizing the history of the matter based on his review of his personal notes as well as the official documents contained in the court file and record of the case.  Record, WD II Tr. at 6.  The following portions of Judge Elliott's summary are relevant to this proceeding.  On the date of the guilty plea, Petitioner had been advised in writing and by Judge Elliott verbally that the charged crime carried a potential maximum sentence of life imprisonment; that there was no plea agreement; and that the plea was a blind plea. Record, WD II Tr. at 8-9.  Petitioner acknowledged that a blind plea meant that sentencing was left to the court notwithstanding the States recommendation. Record, WD II Tr. at 9.  Judge Elliott noted that Petitioner had verbally indicated to the court that he was guilty and that Petitioner had unequivocally informed the court no promises had been made to induce his plea.  *Id.* at 9.  Judge Elliott further reviewed the August 5, 2004, sentencing proceeding and noted that Petitioner had again been informed that pursuant to his plea of guilty he could be sentenced up to life imprisonment. *Id.* at 11.

Mr. Sisson, Petitioner's counsel at the initial plea proceeding, testified that although he was prepared to proceed to trial, both he and Petitioner continued to discuss

and consider the possibility of a plea. Record, WD II Tr. at 18-19. Sisson testified that the State had made a pretrial plea offer of 40 or 45 years, which Petitioner had rejected. *Id.* at 16. Sisson testified that on the morning of trial, while the jury was waiting outside the courtroom, Judge Elliott granted the parties additional time to negotiate. *Id.* at 24-25. The State then offered to recommend a thirty-year sentence if Petitioner entered a blind plea. *Id.* at 21-25. Sisson testified that in his mind, the decision to go to trial or enter a blind plea was a "close case." *Id.* at 19, 26. According to Sisson, during these last minute negotiations, the trial judge's bailiff, J.P. Nolen, came up to Sisson, put his arm around him and stated "You should blind plead this case."[5] *Id.* at 26. Sisson testified that he thought there might be some reason for Nolen's statement, so he informed Petitioner of the statement and told Petitioner "[M]aybe you should consider a blind plea." *Id.* at 29. Sisson testified that while the bailiff's statement "may have been the tie-breaker," there were other factors influencing his recommendation that Petitioner enter a blind plea in the case.[6] *Id.* Sisson testified that he told Petitioner it had been his experience generally that judges do not give a harsher sentence than that asked by the State, "although they certain can." *Id.* at 21. On the other hand, Sisson believed based on the nature of the

---

[5] Mr. Nolan testified that he did talk to Mr. Sisson on the day of trial and told him "You might want to plead this case because it's, you don't have much to go on." Record, WD II Tr. at 61. Mr. Nolan further testified that he had not discussed the case with Judge Elliott, that he had merely stated his opinion, and that he thought that a negotiated plea was being considered by the parties. *Id.* at 62.

[6] Sisson testified that in his own experience Judge Elliott was a "fair and thorough judge who considers all the facts before he pronounces sentences" and that he had seen Judge Elliott give less severe sentences than those recommended by the State. Record, WD II at 30. Sisson testified that although he told Petitioner that he thought Judge Elliott would be fair to Petitioner and he might fare better than in front of a jury, he did not mention a specific sentence that Petitioner might receive. *Id.* at 33.

crime charged that a jury might give Petitioner more than 50 years, possibly a life sentence. *Id.* at 30.[7]

Petitioner testified Mr. Sisson had advised him to enter a blind plea and that he "could get five years in, and five years out." Record, WD II Tr. at 65-66.[8] Petitioner also indicated that while the questions on the summary of facts guilty plea form had been answered truthfully, he had been "persuaded" by counsel to enter the guilty plea. *Id.* at 67, 71. On cross-examination, Petitioner admitted that at the time of the plea he had understood the trial court could impose any sentence up to life imprisonment regardless of any sentencing recommendation made by the State and/or by defense counsel. *Id.* at 68. He further admitted that he had committed the crime charged and that he had no defense. *Id.* at 71. Finally, Petitioner acknowledged he had truthfully indicated on the summary of facts form that no one had promised him anything to enter his plea, and that at the first hearing on his motion to withdraw plea, he had stated no promises had been made to induce his guilty plea, but that since that time he "had time . . . to regroup . . . to think it through." *Id.* at 75-77.

---

[7]In evaluating the case, Sisson considered the fact that Petitioner's wife and daughter, codefendants who could have been called to testify against Petitioner, had initiated the call to the police regarding the incident underlying the case; additionally, Sisson considered that a jury would likely hear certain "other crimes" evidence of prior sexual abuse by Petitioner and Petitioner's confession to a police officer regarding the acts forming the basis of the charge against him. Record, WD II Tr. at 35-36. Based on his analysis of the case, Sisson did not believe there was an effective defense to the charge. *Id.* at 36.

[8]Petitioner's claims as to counsel's sentence estimate are inconsistent. In his habeas petition, he alleges counsel informed him that DOC advised of a five to seven year sentence with counseling. Petition at 6. At the first plea withdrawal hearing, Petitioner acknowledged that he was subject to a sentence of life imprisonment and made no claim that counsel had promised any lesser sentence. *See generally* Record, WD I Tr.

Petitioner does not assert that but for counsel's alleged errors, he would have proceeded to trial. Moreover, nothing in the record reflects that he was falsely promised or guaranteed that a guilty plea would result in a more lenient sentence than the one he received. Rather, the record reflects that Petitioner reviewed and approved the answers on the guilty plea form including the fact that the pleas were not the result of threats, coercion, or promises. Response, Ex. 6. The record clearly shows that Petitioner was fully advised that he could be sentenced up to life imprisonment, and the actual sentence imposed, fifty years of imprisonment, is well within the range for the offense charged.[9] Finally, the record is absent any evidence that Petitioner entered his guilty plea on the basis of a false promise or guarantee.

To the extent Petitioner claims to have misunderstood the advice given by his attorney regarding a sentence estimate, such misunderstanding does not render his guilty plea coerced or involuntary. *Wellnitz v. Page*, 420 F.3d at 936-37. The limited question on habeas review is whether the state court's adjudication of Petitioner's claim that his guilty plea was not knowingly and voluntarily entered was contrary to or an unreasonable application of controlling federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Here, the state court record shows that Petitioner's plea was "a voluntary and informed choice among the alternative courses of

---

[9]Although Petitioner refers in Ground Two to his fifty year sentence as cruel and unusual punishment, he does not appear to separately challenge the constitutionality of his sentence. Petition at 6. In any event, the record shows that Petitioner did not allege in either of his certiorari appeals that his sentence was excessive under state law or the Eighth Amendment. Thus, such claim remains unexhausted and if such claim had been properly raised, the petition would be subject to dismissal as a mixed petition. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Accordingly, the petition has not been construed to allege an excessive sentence claim.

action open to [Petitioner]." *Hill v. Lockhart*, 474 U.S. at 56. Thus, the undersigned finds that the record supports the OCCA's determination that Petitioner's guilty plea was voluntarily and knowingly entered. *See Fields*, 277 F.3d at 1213-14 (finding plea was voluntarily entered and not coerced by counsel's assessment of trial judge's statements and actions and strong urging that defendant enter blind guilty plea); *Braun v. Ward*, 190 F.3d 1181, 1189 (10th Cir. 1999) (finding a guilty plea voluntary because the defendant was "taking his chances" by relying on his attorney's good-faith advice and there was no evidence of guarantees or promises); *Miles v. Dorsey* 61 F.3d 1459, 1470 (10th Cir. 1995) (finding a guilty plea voluntary despite trial counsel's "vigorous urg[ing]" that his client plead guilty because the attorney believed it was in his client's best interest.). Based on the foregoing analysis, the undersigned finds that Petitioner is not entitled to habeas relief under the standards set forth in 28 U.S.C. § 2254(d). *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Accordingly, it is recommended that habeas relief be denied in Grounds One and Two.

II. <u>Ineffective Assistance of Counsel</u>

In Ground Three Petitioner alleges without supporting facts that he was deprived of effective assistance of counsel. Petition at 7. The undersigned liberally construes his argument to be that raised in his second certiorari appeal, where he argued that counsel was ineffective for (1) persuading him to enter a blind plea based upon the statement made by the trial judge's bailiff and (2) failing to follow the advice of a different attorney to go to trial. Response, Ex. 2 at 12-14. On certiorari appeal, the OCCA found that "counsel's performance in representing Petitioner was not professionally unreasonable."

13

Response, Ex. 4 at 2 (citing *Hill v. Lockhart*, 474 U.S. 52 (1985); *Estell v. State*, 766 P.2d 1380 (Okla. Crim. App. 1988); *Fields v. Gibson*, 277 F.3d 1203 (10th Cir. 2002); and *Braun v. Ward*, 190 F.3d 1181 (10th Cir. 1999)).

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court set out the applicable standard for reviewing ineffective assistance of counsel claims in the context of guilty pleas. In accord with *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a defendant challenging the effective assistance of counsel during the guilty plea process must show that counsel's performance was deficient and that such deficient performance prejudiced him. *Id.* at 57-58. As the *Lockhart* Court explained,

> in the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59. However, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Miller v. Champion*, 262 F.3d 1066, 1072 (quoting *Hill*, 474 U.S. at 59). Rather, the Court "look[s] to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." *Id.*

In *Fields v. Gibson*, 277 F.3d 1203 (10th Cir.2002), the Tenth Circuit addressed whether counsel's advice to waive jury sentencing constituted deficient performance. Trial counsel believed that if the defendant accepted a blind plea he could avoid the death penalty. *Fields*, 277 F.3d at 1209. Counsel's belief was based upon various

14

conversations, one ex parte, with the trial judge. *Id.* at 1209-10. Notwithstanding, the judge's comments, it was undisputed the judge did not promise or guarantee anything. *Id.* at 1210. Counsel "relayed her impressions" to her client and ultimately, with the assistance of his family, persuaded the defendant to enter a guilty plea. *Id.* The trial court accepted the plea and, after a bench sentencing hearing, imposed a sentence of death. *Id.* The defendant later attempted to withdraw his plea, but his attempt was rejected by the trial court, which decision was upheld on appeal. *Id.* at 1211. The Tenth Circuit determined that the defendant's plea was voluntarily entered and that trial counsel's advice to waive jury sentencing, although based in part on counsel's interpretation of the judge's ex parte comments, did not constitute deficient performance. *Id.* at 1214-15. The Circuit acknowledged that "[t]he fact that the desired result was not reached in this case does not render defense counsel ineffective." *Id.* at 1216 (citing *Fields v. State*, 923 P.2d 624, 635 (Okla. Crim. App. 1996)). Moreover, the court noted that "[l]awyers . . . are supposed to draw conclusions from all the evidence in a case and recommend what they think is in their clients' best interest. . . . that is precisely what [counsel did, even if her conclusions were in hindsight, unwarranted." *Fields*, 277 F.3d at 1216.

Here, the record reflects that the evidence against Petitioner, which included his own confession, was overwhelming. Thus, counsel's strategic decision to recommend that Petitioner enter a plea of guilty is well within the range of reasonable professional assistance. Moreover, it is clear from the guilty plea summary of facts form and the record of the second hearing on the motion to withdraw plea that Petitioner was fully

15

informed of the consequences of his guilty plea, that he understood that there was no plea agreement and that the trial court could impose a maximum sentence of life imprisonment. Despite Petitioner's claims, there is no evidence in the record indicating that trial counsel made a promise or guarantee to Petitioner that the trial court would impose the thirty year sentence recommended by the State, or even the five to seven year sentence which Petitioner claims was suggested by DOC. Rather, as discussed above, the record reflects that Petitioner made a conscious decision between two viable options. Without more, Petitioner has failed to prove that counsel's advice was constitutionally deficient. *See Strickland*, 466 U.S. at 696-697 (defendants must overcome the "strong presumption" that particular decisions by counsel can be characterized as sound trial strategy). Consequently, the OCCA's conclusion that Petitioner's counsel's performance was not deficient was not contrary to, and did not involve an unreasonable application of, *Hill v. Lockhart, supra,* and *Strickland v. Washington, supra*. Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

## **RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 8th of August, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and

Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 19th day of July, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE